UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOE HAND PROMOTIONS, INC.,

Plaintiff(s),

v.

BET YOU LOVE MY SMOKE LLC d/b/a
MR. FRIES, et al.,

Defendant(s).

Case No.2:24-CV-2145  JCM (NJK)


ORDER


Presently before the court is plaintiff Joe Hand Promotions, Inc.'s motion for default judgment. (ECF No. 8).  Defendants Bet You Love My Smoke LLC (doing business as Mr. Fries), Casia Cook, and Joseph Cook (collectively "defendants") did not respond.

**I.    Background**

This dispute arises from alleged violations of The Federal Communications Act of 1934, 47 U.S.C. §§ 605 and 553. (ECF No. 1 at 6).  Plaintiff is a company that licenses and distributes pay-per-view sporting events to commercial establishments such as bars and restaurants.  (*Id.* at 4).  Plaintiff enters into agreements where, for a fee, these establishments can display the program on televisions for their patrons.  (*Id.*).  Plaintiff pays outside auditors to identify and investigate establishments that are displaying programs without paying for licenses.  (ECF No. 8 at 4).

Plaintiff held the exclusive commercial license to distribute and authorize the public display of the pay-per-view broadcast of the boxing exhibition *Terence Crawford vs. Shawn Porter.* (ECF No. 1 at 2).  Defendant Mr. Fries is a restaurant and bar in Las Vegas, Nevada.  (*Id.*).  On November 21, 2021, an auditor visited Mr. Fries and observed the boxing match being shown on one of three televisions without defendants having paid for a license.  (ECF No. 8, Ex. H).

Plaintiff filed suit on November 18, 2024, and despite being properly served, defendants have not appeared before the court.  (ECF No. 1).  Plaintiff moved for the entry of clerk's default, which was granted.  (ECF Nos. 6, 7).  Plaintiff now moves for default judgment.  (ECF No. 8).

**II.     Legal Standard**

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  "First, a party must obtain a clerk's entry of default under Rule 55(a)," and second, "the party may seek entry of default judgment under Rule 55(b)."  *Doe v. Jeffries*, No. 18CV2021-MMA (JMA), 2018 WL 6582832, at *1 (S.D. Cal. Oct. 17, 2018) (citing *Symantec Corp. v. Glob. Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009)).   The court considers seven factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

**III.     Discussion**

A. Procedural requirements

The required procedures described in Federal Rule of Civil Procedure 55 have been satisfied.  The clerk entered default on July 16, 2025.  (ECF No. 7).

B. Factors for default judgment against defendants

*1.   Possibility of prejudice*

The first *Eitel* factor requires the court to consider the possibility that plaintiff will suffer prejudice if default judgment is denied.  *Eitel*, 782 F.2d at 1471.  Here, defendants have not filed a responsive pleading, despite being properly served.  Plaintiffs will have no other recourse for recovery if default is denied.  Thus, this factor weighs in favor of default judgment.

*2.   Merits of claim and sufficiency of complaint*

The second and third *Eitel* factors analyze the substantive merits of plaintiff's claim and

the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. To warrant default judgment, the allegations in the complaint must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). "The general rule is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted).

Plaintiff sued alleging violations of 47 U.S.C. §§ 605 and 553. Plaintiff correctly states that a party may recover damages only under one of these sections and seeks damages pursuant to § 605.

The Federal Communications Act of 1934, 47 U.S.C. § 605 et seq. prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license. To recover under § 605, the plaintiff must establish "that a defendant has '(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff.'" *California Satellite Systems v. Seimon,* 767 F.2d 1364, 1366 (9th Cir.1985) (citing *National Subscription Television v. S & H TV,* 644 F.2d 820, 826 (9th Cir.1981)); *see also G & G Closed Cir. Events, LLC v. Kim Hung Ho*, No. 5:10-CV-05716 EJD, 2011 WL 6217598, at *1 (N.D. Cal. Dec. 14, 2011).

Plaintiff has alleged that defendants unlawfully intercepted and published plaintiff's communication when defendants displayed the program on the television without paying for a license. This is sufficient to succeed on the merits and thus this factor weighs in favor of default judgement.

### 3. *Money at stake*

The third *Eitel* factor requires the court to consider the amount of money at stake in relation to the seriousness of defendants' conduct. *See Eitel*, 782 F.2d at 1471. "[D]efault judgment is disfavored when a large amount of money is involved or is unreasonable in light of the [d]efendant's actions." *Warrington v. Taylor*, 2022 WL 2062921, at *3 (C.D. Cal. Mar. 9, 2022) (quoting *Valentin v. Grant Mercantile Agency, Inc.*, 2017 WL 6604410, at *7 (E.D. Cal. Dec. 27, 2017)).

Plaintiff requests a total of $20,000 as a baseline, and this is not fundamentally unreasonable since the sum is within the statutory range.  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). However, the court will discuss damages in more detail *infra*.  The court finds that this factor weighs in favor of default judgment.

### 4.  *Whether default was due to excusable neglect*

The fourth *Eitel* factor requires the court to consider whether the default was due to excusable neglect.  *Eitel*, 782 F.2d at 1472.  Here, defendants were personally served with the summons and complaint and chose to remain absent from the proceedings.  (ECF No. 4).  This factor weighs in favor of default judgment.

### 5.  *Possibility of dispute concerning material facts*

The fifth *Eitel* factor requires the court to consider whether there is a dispute over material facts.  *See Eitel*, 782 F.2d at 1471–72.  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc.*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Since defendants have not filed any motions or responsive pleadings in this case, they have not contradicted any of the allegations, and there cannot be a possibility of dispute.  This factor weighs in favor of default judgment.

### 6.  *Public policy favoring a decision on the merits*

The final *Eitel* factor is whether there is a strong policy favoring a decision on the merits. *Eitel*, 782 F.2d at 1472.  Although this factor inherently favors decisions on the merits, "this preference, standing alone, is not dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  In fact, when a defendant fails to respond to the plaintiff's complaint, ignores requests to participate in litigation, and fails to demonstrate an intent to defend the action, this factor shifts in favor of default judgment.  *See Sideshow, Inc. v. Damon*, 2020 WL 8093348, at *4 (C.D. Cal. Nov. 16, 2020).

Here, defendants have failed to appear or otherwise respond to plaintiff's complaint. Defendants have not demonstrated an intent to defend themselves in this action.  This factor weighs in favor of default judgment.

. . .

**IV.    Remedies**

A. <u>Damages</u>

Although the court has discretion when determining the amount of damages, *see* Fed. R. Civ. P. 55(b)(2), "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. "It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

For each violation of § 605, plaintiff is entitled to damages of $1,000 to $10,000, the exact amount to be determined by what the court "considers just." *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff requests to the court to award maximum statutory damages of $10,000. This number is fundamentally unreasonable given the actions of defendants.

When attempting to justify such an award, plaintiff muddies the water to make it seem deep. Plaintiff goes on at length discussing why it is entitled to statutory damages while citing to a number of non-binding, unpersuasive, and at times unconnected cases. *See Evony, LLC v. Holland,* 2011 WL 1230405, at *3 (W.D. Pa. Mar. 31, 2011) (discussing statutory damages under the Copyright Act, DMCA, and the Lanham Act but not under The Federal Communications Act)*; Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981) (discussing damages under the Copyright Act and not the Federal Communications Act). A single Eleventh Circuit case noting that both the copyright and communications statutes allow an election of actual or statutory damages does not permit extending Copyright Act analysis to the Communications Act, as plaintiff suggests. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).

Despite plaintiff's longwinded dialogue being unimpressive, some of the rationale admittedly holds true. The court agrees that it is important to make plaintiff whole, strip defendants of the profit they recognized from the unlawful showing of the program, and deter future violations.

. . .

- 5 -

In addition to standard statutory damages, the court has discretion to increase the award of damages for each violation in an amount up to $100,000 when a "violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." *See* 47 U.S.C. § 605(e)(3)(C)(ii).

In arguing for enhanced damages, plaintiff contends that the rules governing default support a finding of willfulness. However, the question of willfulness bears directly on the question of damages, and the mere assertion that defendants acted willfully is insufficient to justify enhanced damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Plaintiffs further argue that even without defendants' admissions, courts hold that intercepting an encrypted pay-per-view program for public display is wilful and for financial gain. *Time Warner Cable v. Googies Luncheonette, Inc*., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). The court is unpersuaded by this argument and the non-binding support for it.

However, plaintiff has provided evidence to support that defendants advertised that they would be displaying plaintiff's program. (ECF No. 8, Ex. F). Accordingly, the court finds that the defendants' violation was willful.

Here, defendants were displaying the program on one of three televisions in their establishment. (ECF No. 8, Ex. D). The auditor conducted a headcount three separate times, and there were only nine individuals in the restaurant. (*Id.*). It is unclear whether this headcount includes the auditor and/or the man "believed to be the owner/manager of the establishment." (*Id.* at 1). The auditor even commented on the lack of patrons in attendance the night of the violation. (*Id.*).

Accordingly, the court finds that plaintiff is entitled to $2,000 in enhanced damages. This represents twice the minimum statutory damage and is fair compensation given the facts before the court.

B. Individual Liability

Plaintiff does not cite, and the court has not identified, a Ninth Circuit Court of Appeals decision adopting a test for determining when an LLC member may be individually liable under § 605. However, courts in this district generally hold that "a plaintiff must show '(1) the [defendant]

- 6 -

had a right and ability to supervise the infringing activities and (2) had an obvious direct financial interest in those activities.'" *J & J Sports Prods., Inc. v. Rubio*, No. CV-17-1026-PHX-DGC, 2019 WL 160649, at *2 (D. Ariz. Jan. 10, 2019) (quoting *G&G Closed Circuit Events, LLC v. Miranda*, No. 2:13-cv-2436-HRH, 2014 WL 956235, at *4 (D. Ariz. March 12, 2014)).

Defendants Joseph Cook and Casia Cook are listed as the corporate officers and managers of Mr. Fries.  (ECF No. 8, Ex. G).  As such, they had a right and ability to supervise the infringing activities and an obvious direct financial interest in allowing the infringing activities to occur. Accordingly, Joseph and Casia Cook are deemed to be liable alongside the corporate entity.

### C.  Attorney's fees

The court is mandated by statute to award attorneys' fees and costs and will do so in accordance with the law.[1]  47 U.S.C. § 605(e)(3)(B)(iii).  The court accepts plaintiffs' calculation of costs incurred and awards an additional $750.  Further, plaintiff shall submit a fee affidavit so the court may accurately determine the amount plaintiff is entitled to.

### D.  Conclusion

In sum, plaintiff is entitled to:

1.  $2,000 in enhanced statutory damages;

2.  attorney's fees which will be determined upon the court's receipt of plaintiff's fee affidavit , and;

3.  $750 in costs.

---

[1]    Although the court is obligated to award attorneys' fees, it only does so reluctantly.  The Honorable Judge Burns's comments regarding plaintiff in *Joe Hand Promotions, Inc. v. Streshly* remain accurate today.  655 F. Supp. 2d 1136, 1139 (S.D. Cal. 2009).  In *Streshly*, plaintiff asked the court for more than $100,000 for a similar violation. *Id.*  Judge Burns accurately claimed that plaintiff was attempting to "obtain the biggest judgement it can by filling cookie-cutter pleadings that trivialize the particular facts of [the] case and ignore voluminous case law that reveals its requested judgment to be so wildly out of question." *Id.*

It seems that plaintiff has not learned the lesson the court attempted to teach it over a decade ago when it denied its default judgment. *Id.*  Here, although plaintiff requests a total of $20,000—much less than its $100,000 request in *Streshly*—plaintiff cannot help itself but overreach.  Plaintiff requests the maximum statutory award for a relatively minor violation of the law, argues for enhanced damages, and indirectly requests for an absurd $110,000 award.  (ECF No. 8 at 13) ("Plaintiff is entitled to a default judgment against defendants holding them liable for a sum, in the discretion of the court of up to $110,000 for each violation of 47 U.S.C. § 605(a).").

Additionally, it is apparent to the court that plaintiff still uses cookie-cutter pleading and has done so in front of this court.  Specifically, the motion for default judgment is devoid of Ninth Circuit precedent despite there being more than enough case law on this area of law.  Instead, plaintiff's arguments are largely supported by district court cases from other circuits. *See e.g.*, *Arista Records, Inc. v. Flea World, Inc.*, 2006 WL 842883 (D.N.J. 2006); *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747 (S.D. Tex. 2014).

**V.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion for default judgment (ECF No. 8) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that within 21 days of this order, plaintiff shall submit a fee affidavit for the court's review of attorneys' fees.

DATED January 23, 2026.

_____
UNITED STATES DISTRICT JUDGE